**STAUB, Plaintiff-Appellee, v. MULARCHIK, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24819. Decided November 19, 1959.

Hyman Blum, for plaintiff-appellee.
Homer W. Giles, for defendant-appellant.

## OPINION

By KOVACHY, J.

This is an appeal on questions of law from a judgment entered on a verdict rendered by a jury of 12 in favor of Herbert Staub, plaintiff, and against Myron Chicota and Paul Mularchik, defendants, in the Court of Common Pleas of Cuyahoga County. Defendant, Paul Mularchik, only is appealing.

Plaintiff and defendant-appellant were duly licensed real estate salesmen employed by a duly licensed real estate broker, Myron Chicota, who conducted a real estate office in the city of Strongsville, Ohio. Chicota had other activities and spent little time in the office. Paul Mularchik managed and conducted the affairs of the real estate office. A parcel of land was sold producing a commission of $5000.00. Plaintiff in his third amended petition averred that:

"It was orally agreed between him and the other two (2) Defendants that if they or either of them would procure a buyer and sell this property that the defendant, Myron Chicota, would receive one-half (½) of the commission and that the Plaintiff herein would receive one-fourth (¼) of the commission and the Defendant, Paul Mularchik, would receive the other one-fourth (¼) of the commission."

The record shows a motion for a directed verdict by defendant Mularchik at the close of plaintiff's evidence and again at the close of all the evidence. These were overruled.

The trial judge in charging the jury said that the sole and only issue for it to decide was whether there was an oral contract made between the plaintiff and the defendants under which it was agreed, that if the plaintiff or Mularchik, or either of them, would procure a buyer and sell the property in question, then defendant Chicota was to receive one-half of the commission, defendant Mularchik was to receive one-fourth of the commission, and plaintiff Staub was to receive the remaining one-fourth of the commission. The unanimous verdict of the jury indicated that it found such an agreement to have been made.

The appellant presents but one assignment of error in this court:

"* * * that the trial court errored (sic) in denying Defendant's (Appellant herein) motion for a directed verdict at the conclusion of the Plaintiff's (Appellee herein) case (R. 85, 86), or at the conclusion of all the evidence (R. 128), which error was prejudicial to the rights of the Appellant herein."

The record shows that the appellant went forward with his defense upon the overruling of the motion for a directed verdict at the close of plaintiff's case. He, as a consequence, waived any error that may have been committed by the court with respect to that motion. **Halkias v. Wilkoff Co., 141 Oh St 139, 47 N. E. 2d 199; Wilkeson v. Erskine & Son, Inc., 145 Oh St 218, 61 N. E. 2d 201.** As a result, we have before us but one question for determination, namely: should the court have granted the motion for a directed verdict at the close of all the evidence?

The parties conceded in the trial of this cause that the defendant Chicota was entitled to one-half of the commission as the broker in the transaction and that he instructed the escrow agent to pay the remaining one-half of the commission to defendant Mularchik.

The bill of exceptions discloses evidence of a substantial nature that it is customary in the real estate business for salesmen to agree upon the proportion each is to receive of a commission allotted to them in a given transaction; that the appellant Mularchik was in charge of and managed the real estate office for broker Chicota; that plaintiff-appellee and defendant-appellant orally agreed to divide the commission allocated

to them in the real estate transaction in question equally between themselves as an incentive to carry on the business of the office. regardless who was the procuring cause of the sale; that each played some part in the attempt to sell the parcel of land in question; and that defendant Chicota knew of the understanding between Staub and Mularchik concerning this commissio.n

We are of the opinion that the record shows a prima facie case was made out against the defendant Mularchik under the third amended petition, which required the court to submit the case to the jury for determination. We hold, therefore, that the trial court committed no error in overruling the motion of the appellant for a directed verdict at the close of all the evidence presented in the case.

Judgment affirmed.

HURD, PJ, concurs.
SKEEL, J, dissents.

## DISSENTING OPINION

By SKEEL, J.

This appeal comes to this court on questions of law from a judgment entered for the plaintiff on the verdict of a jury against both defendants in the Court of Common Pleas of Cuyahoga County. The defendant, Chicota, did not appeal. The defendant, Mularchik, who was made a defendant upon the filing of an amended petition, is the appellant in this appeal He claims the following error:

"The appellant. for its assignment of error, says that the trial court errored (sic) in denying Defendant's (Appellant herein) motion for a directed verdict at the conclusion of the Plaintiff's (Appellee herein) case (R. 85. 86). or at the conclusion of all the evidence (R. 128), which error was prejudicial to the rights of the Appellant herein."

The action was begun by the filing of a petition naming as the only defendant Myron Chicota who is a licensed real estate broker. The plaintiff is a licensed real estate salesman as well as a lawyer. The plaintiff had become a salesman for Chicota with respect to some property located on Shurmer Road (mistakenly called Sherman Road in the pleadings) in Strongsville, Ohio. The defendant not only was a real estate broker who had an exclusive right to sell the property in question but also had an interest in the property. As a broker doing business under the name All State Realty, Chicota first engaged the plaintiff. Herbert Staub. as a licensed real estate salesman, and then Paul Mularchik and Steven Drabik were added to the sales force as salesmen. Paul Mularchik acting as sales or office manager. It was expected that Chicota would allot the property in question and build and sell residences but the project could not be financed so he decided to sell the tract of land. The real estate salesmen stayed on for that purpose and also to develop a real estate busines. Before the property was sold, that is about December 28. 1955, Steven Drabik left the employ of Chicota. The property was finally sold whereby a commission of five thousand dollars was earned, the agency (Chicota) having the right to

half of the commission. The other half or twenty-five hundred dollars, was paid by a check on the escrow account to Paul Mularchik by the order of Chicota, the plaintiff claimed a right to that part of the commission payable to the salesmen of the agency for consummating the sale and, therefore, brought this action against Myron Chicota as defendant, seeking a judgment against him in the sum of twenty-five hundred dollars. He alleged in his first petition that the defendant, a licensed real estate broker, promised to pay him one-half of the $5,000 commission or twenty-five hundred dollars for the sale of the Strongsville tract. It is further alleged that the property was sold in January, 1956, and that there was due him from the said defendant the full amount of twenty-five hundred dollars. The plaintiff verified under oath as true the foregoing facts as set out in his petitio.n The defendant demurred to the petition but before the demurrer was ruled upon, filed an answer whereupon the demurrer was dismissed. The plaintiff then, with leave of court, made Paul Mularchik a new party defendant and filed an amended petition.

By his amended petition, plaintiff alleged that Chicota was a licensed real estate broker and that Mularchik was a licensed real estate salesman working with the plaintiff for the defendant Chicota. He further alleges that in the latter part of 1955, the defendant Chicota, as a broker, was attempting to sell some property in Strongsville and that he turned the "attempted sale" over to the plaintiff and the defendant Mularchik. He then alleges:

"Plaintiff further says that the defendant, Myron Chicota, promised to pay, both the Plaintiff and the new party Defendant Mularchik, one-half (½) of any commission due for the sale of the above property; that said property was sold in January, 1956; that both Defendant, Paul Mularchik and the Plaintiff were the procuring cause of the sale * * *" resulting in a commission of five thousand dollars whereby plaintiff was entitled to one thousand two hundred and fifty dollars as his share; that defendant Chicota caused to be paid to the new party defendant one-half of the entire commission or twenty-five hundred dollars well knowing the plaintiff was entitled to one-fourth of the commission. Plaintiff prayed for a judgment against both defendants on the foregoing allegations of fact for $1250.00.

A demurrer was filed to the amended petition by the new defendant Mularchik but before it was ruled upon, a second amended petition was filed by the plaintiff upon leave granted.

The second amended petition alleges in part:

"Plaintiff for his cause of action says that in the latter part of the year 1955, the Defendant, Myron Chicota, as a broker, had a listing to sell property located at Sherman Road in the City of Strongsville, Ohio, and that he turned over said listing to the Plaintiff, who, thereafter, worked with the Defendant, Paul Mularchik, as partners in the sale of this property with the understanding that if they, or either of them, would sell this property, that they would receive one-half (½) of the commission from the Defendant, Myron Chicota, and that said one-half (½) of the commission would be divided equally between the Plain-

tiff and the Defendant, Paul Mularchik. Plaintiff says that it is the custom in the real estate business to split commissions in the manner and form aforesaid."

It is further alleged in the second amended petition that the sale of the property was concluded, and a commission of five thousand dollars became due, twenty-five hundred being payable to Myron Chicota, as broker, and twenty-five hundred to be divided between the plaintiff and the defendant, Paul Mularchik, as salesmen. That the defendant, Myron Chicota, in order to defraud plaintiff out of his part of the commission, directed the escrow agent to pay, and the said escrow agent did pay, twenty-five hundred dollars directly to Paul Mularchik who refused to pay this plaintiff his share of twelve hundred and fifty dollars for which judgment is asked against both defendants.

By a third amended petition filed upon leave, the plaintiff says that the defendant, Chicota, turned over to him his (Chicota's) exclusive listing on the Strongsville property "for the purpose of selling this property and that Plaintiff herein thereafter obtained the assistance of the defendant, Paul Mularchik, to work with him jointly and with the permission of the Defendant, Myron Chicota, in the procuring of a buyer for this property."

"Plaintiff further says it was orally agreed between him and the other two (2) Defendants that if they or either of them would procure a buyer and sell this property that the Defendant, Myron Chicota, would receive one-half (½) of the commission and that the Plaintiff herein would receive one-fourth (¼) of the commission and the Defendant Paul Mularchik, would receive the other one-fourth (¼) of the commission." It is also alleged that this manner of splitting commissions is customary in the real estate business. The petition continues by saying that the property was sold, a commission of five thousand dollars was earned, of which the defendant, Chicota, as agreed, was to receive twenty-five hundred dollars, and Mularchik was to receive one-half of the remainder ($1250.00) and the plaintiff was to receive a like amount. This pleading then alleges:

"Plaintiff further says that the sale of the aforesaid property was escrowed with the Cuyahoga Abstract Title and Trust Company, and unbeknown to this Plaintiff and without his permission or consent, both the Defendants conspired to defraud him (Plaintiff) out of his share of the commission amounting to One Thousand Two Hundred Fifty Dollars ($1250.00) in that the Defendant, Myron Chicota with the consent and knowledge of Defendant, Paul Mularchik, instructed the Cuyahoga Abstract Title and Trust Company to pay to Paul Mularchik, out of said funds, both shares due Paul Mularchik and the plaintiff herein, totalling Two Thousand Five Hundred Dollars ($2500.00), all to his (Paul Mularchik) unjust enrichment in the amount of One Thousand Two Hundred Fifty Dollars ($1250.00)."

It thus appears that this lawsuit was begun by the plaintiff alleging that there was due him (a licensed real estate salesman) from his employer (a real estate broker) the sum of $2500.00 as a commission for his services in the sale of property listed with his employer for

sale. Such claim was changed by an amended petition in which, after naming a new party defendant (Mularchik) it was alleged that the plaintiff and Mularchik, both real estate salesmen, were employed by the defendant broker (Chicota) to work on the sale of property listed with the broker; that through the efforts of both salesmen, the property was sold whereby they were each entitled to $1250.00 for which sum plaintiff asked judgment against both defendants. The second amended petition alleged that plaintiff received the exclusive listing for the property from the broker, Chicota, and that the defendant, Mularchik, joined him (the plaintiff) as a partner and that each, by virtue of the partnership, was entitled to one-half of the salesman's portion of the commission. The claim of a partnership is completely abandoned in plaintiff's third amended petition which is based upon an alleged oral agreement between the defendant Chicota (broker), the defendant Mularchik, and the plaintiff. The third amended petition also alleges that both defendants "conspired to defraud" plaintiff, in that the defendant, Chicota, with the knowledge and consent of defendant, Mularchik, ordered the escrow agent to pay to Mularchik all of the salesmen's portion of the commission, which was done.

It must be noted that the alleged agreement upon which plaintiff's claim for a commission finally came to rest, although directly in conflict with his previous claims, as set out in his successive petitions, was as follows:

"Plaintiff further says that it was orally agreed between him and the other two (2) Defendants that if either of them (probably meaning the plaintiff and Mularchik) would procure a buyer and sell this property that the Defendant, Myron Chicota (broker), would receive one-half (½) of the commission and that the Plaintiff herein would receive one-fourth (¼) of the commission and the Defendant, Paul Mularchik, would receive the other one-fourth (¼) of the commission."

This allegation is followed by a claim of conspiracy between his employer and his fellow employee (Mularchik) to defraud him of his share of the commission.

There is no allegation in the third amended petition that the defendant Mularchik ever promised to pay the plaintiff, as his personal debt, any part of the commission that might become due him (the plaintiff) from his employer and there is no attempt in the evidence to support the allegations of conspiracy and fraud.

The evidence in the case as presented by the plaintiff shows that the defendant, Chicota, as a real estate broker, employed the plaintiff and the defendant, Mularchik (and one Steven Drabik), as real estate salesmen. There is not a shred of evidence that the plaintiff employed Mularchik to work with him on the sale of the property in question. They were fellow employees of the defendant, Chicota. Whatever agreement there was, if any, as exemplified by whatever evidence there is on the subject, was between plaintiff and Mularchik, as to the basis upon which a split of the commission (due from their employer) between the salesmen would be had. The defendant broker, Chicota, was not a party thereto or is it alleged or claimed that he was a party to any alleged understanding as to a split in commissions between the plaintiff and

Mularchik. It was never even suggested that one salesman would become personally liable to the other for any part of whatever commission was earned.

The plaintiff, as a witness, when first asked about how commissions were to be paid, said: "Oh, Mr. Mularchik suggested that in view of the fact that we had been unable to develop the allotment, put in streets, sewers, so forth, that the allotment should be sold as a whole, and regardless of who sold it, or to whom, we would all divide the commission, the three of us." (By the three of us was meant Staub, Drabik and Mularchik). His testimony further was to the effect that shortly after (Drabik left the agency) * * * it was at that time agreed that Mr. Mularchik and I would split fifty-fifty, and both of us would help to give Mr. Drabik something for his time that was spent down here." The plaintiff also testified:

"Q. Was there any discussion as to how much that commission would be?

"A. At that time we didn't know what the selling price would be.

"Q. I am talking about the percentage.

"A. It would be divided equally between the three.

"Q. Where would Chicota come in?

"A. Receive the fifty per cent as the broker.

"Q. And the other fifty would be divided between you, Mularchik, and this Drabik?

"A. That is correct, sir."

He further testified that, "One morning Mr. Mularchik and I were sitting in the office and Mr. Chicota came in. He said he was very tired, and finally he completed the signing up of the escrow, and he said 'in about ten weeks—or ten days or two weeks, you boys will have your money.'" His testimony further shows that when salesmen agree on a split of commissions, particularly where the employer is not a party to, or present when, such understanding is had (as is the case here), one of them would tell the broker of his agreement or understanding to enable the broker (if he has no other agreement with his salesmen) to make proper distribution. There is no evidence of any such notice to the defendant Chicota.

The plaintiff called Steven Drabik who testified, in part:

"Q. At the second meeting, was there any discussion about commissions?

"A. Well, the discussions, I think that we had at that time, were more or less that inasmuch as there was no more homes to be sold, because they weren't going to build any more, there was no money to build, it was advisable for us to get together and if anybody, or if any one of us should make a deal of any kind, we would split the commission among ourselves, inasmuch as we were all doing the same amount of work, and all working pretty hard.

"Q. What do you mean, 'all of us'?

"A. Between the three of us. In other words, the broker would naturally get his share, one-half of whatever the commission might be, and the other three would split the other commission.

"Q. Who was meant by the three?

"A. Mr. Mularchik, Mr. Staub, and myself.

"Q. Let me get you straight. You say there was a discussion held, it was agreed that regardless who did the work, who did the selling, who did anything, it would be split three ways. I mean that fifty per cent. Is that right?

"A. So long as the three of us were together, that is the understanding I had, that it would be split three ways evenly.

"Q. You say that took place at the second meeting?

"A. At the second, or possibly the third meeting. We had meetings almost every week there.

"Q. Was Mr. Chicota present at any of these meetings?

"A. Not at the real estate office that I can recall. We had one or two meetings at his house. He was always busy trying to get that building program underway, and he was very seldom at the office."

The foregoing evidence, which was repeated in two or three other places in the record, to the effect that the salesmen had agreed to a percentage split among themselves as to commissions earned, does not disclose a syllable of evidence that Mularchik, with his fellow employees, agreed to pay any sum whatsoever as his or their debt from whatever source received.

The debt upon which the plaintiff seeks to recover a judgment is that of the broker, the defendant Chicota. In this action the plaintiff has already recovered his judgment against Chicota for the full amount of his claim which judgment has not been appealed. Inasmuch as the claims against Chicota, which were predicated upon his relationship as plaintiff's employer and against Mularchik, the latter claims being based on an alleged oral agreement, are separate and distinct, this appeal will in no way affect his judgment against his employer.

It is clear that the evidence as set out goes no further than to show that as fellow employees of Chicota, they entered into a mutual understanding as to how commissions earned would be split. No consideration is evidenced in the record by which any salesman would become liable to the others as his personal responsibility for commissions becoming due from their employer. Nor was the employer a party to their mutual understanding. If it could be said that an actual contract is here established between the salesmen requiring one to pay the commission due from the employer to the other, then unless the contract be in writing, signed by the party to be charged, the agreement would not be enforceable under the Statute of Frauds. Nor can these employees dictate to their employer the manner in which he liquidates his debts to his employees. Here Chicota directed the commission paid to Mularchik. This could be for the reason that he, in the opinion of his employer, was the sole procuring cause of the sale whereby under his contract with the salesman, he was entitled thereto and the only way that Chicota could relieve himself of such debt was to disburse the funds as he did. The record can be interpreted as supporting this conclusion. In any event, the employer is privileged to discharge his debts as he chooses and if he is in error, he must stand the consequences. Such

responsibility cannot be put upon an employee unless the employer is led into error to his damage by such employees' representations in which event, the action would be between such employee and his employer and not between employees.

The conclusion to be reached under the foregoing facts is that no cause of action is stated by Staub against Mularchik in the third amended petition and there is no evidence of an enforceable contract between Staub and Mularchik upon which this action may be maintained.

The judgment against Mularchik should be reversed and final judgment entered in his favor.